OPINION
{¶ 1} Michael A. Kondik appeals from a judgment of the Portage County Court of Common Pleas, Domestic Relations Division, in which the trial court granted him and Janice D. Kondik a divorce, divided their property and debts, and awarded spousal support to Mrs. Kondik. For the following reasons, we affirm in part and remand the case for further proceedings consistent with this opinion.
 {¶ 2} Dr. Kondik, 77, and Mrs. Kondik, 71, were married on November 6, 1993, and lived together for almost fourteen and half years. This was the second marriage for *Page 2 
both. On December 27, 2006, Dr. Kondik filed a complaint for divorce in the Portage County Common Pleas Court. After trial, the trial court issued its Final Decree of Divorce. Mrs. Kondik timely appealed and assigns the following errors for our review:
 {¶ 3} "[1.] The trial court erred to the prejudice of appellant in its division of property.
 {¶ 4} "[2.] The trial court erred to the prejudice of appellant in its award of spousal support."
 {¶ 5} Division of Property
 {¶ 6} Under her first assignment of error, Mrs. Kondik takes issue with the trial court's determination of her share of the equity in the marital home. The division of the parties' interest in the marital home in this case is complicated by two factors. The first involves the significant appreciation of the marital home between the time of the parties' marriage and divorce. The second involves the substantial proceeds from a personal injury claim received by Dr. Kondik for injuries he sustained in an automobile accident prior to their marriage. He received a total of $361,000 between 1993 and 1995.
 {¶ 7} The main asset to be divided in this divorce case is the marital home. The house is located on State Route 82 in Mantua and was built in 1850, sitting on 64 acres of land. Dr. Kondik owned the property prior to their marriage. In 1993, the year of their marriage, the property was appraised by a real estate appraiser, Jack Kohl, for a value of $223,600,
 {¶ 8} At trial, Mr. Kohl testified that the real estate market in the area "probably" appreciated over the last decade on average two to three percent per year. However, because of the large acreage of the property, the marital home's current highest and *Page 3 
best use is no longer for residential use but for development use. He testified that in July 2007, he appraised the home at between $900,000 and $950,000, based on its highest and best use as land for development. Mr. Kohl testified, however, that there was a three to four-year inventory of already developed lots in the particular market area, and as a result it would take three to four years for the land to be sold for development purposes. He stated that the big tracts in the area stopped selling and therefore there was no good market data for his market analysis. He could not find any comparables for larger tracts analysis in the Mantua, Shalersville, or Hiram area for the last eighteen months. He opined it would take a long time to sell the instant property, and it would be difficult.
 {¶ 9} Mrs. Kondik did not offer any opinion of value of the marital real estate or evidence contradicting Mr. Kohl's testimony that it would take three to four years to sell the land at the estimated value at its highest and best use.
 {¶ 10} Regarding the proceeds from his personal injury claim, Dr. Kondik testified he used the proceeds to pay his first ex-wife $50,000, which he owed under their divorce decree, and $33,886 on the outstanding mortgage on the marital home, which he owned prior to the marriage. He also used some of the proceeds to purchase a 1997 Jeep ($32,000), a 1994 Dodge Caravan ($6,500), a 1979 Mercedes ($8,400), and a Satoh Tractor ($6,500), and to construct a 40' by 60' barn at the marital home at a cost of $35,000. However, Dr. Kondik testified he could not remember whether the proceeds checks were deposited into a separate or joint bank account and he was unable to find any cancelled checks or banks statements regarding the proceeds. Mrs. *Page 4 
Kondik testified, on the other hand, that the proceeds checks were deposited into a joint account.
 {¶ 11} In his post-trial brief, Dr. Kondik did not challenge Mrs. Kondik's characterization of the appreciation of the marital home as marital property. However, he contended that because he used $35,000 from his personal injury proceeds to build the barn, he has, in addition to the 1993 appraised value of the house, additional separate property in the marital home in the amount of $35,000. He alleged the bank accounts statements were not available for tracing his personal injury proceeds because Mrs. Kondik refused to provide them during the course of the litigation and may have destroyed them.
 {¶ 12} In his post-trial brief, Dr. Kondik also asserted that the present value of the marital home, which is appraised at $900,000 at its best use, should be discounted for four years at a rate of 5%. To calculate the present value of $900,000, he attached to his brief a printout from a "present value calculator" program obtained from Google, which showed the result of $900,000 discounted for four years by 5% to be $740,432.
 {¶ 13} In her post-trial brief, Mrs. Kondik argued that the value of the marital home was $925,000 and that Dr. Kondik's separate property in the marital home was only its pre-marital 1993 appraised value of $223,600.
 {¶ 14} In its judgment entry, the trial court adopted Dr. Kondik's proposal regarding the present value of the marital home and the separate property portion of the marital home. Specifically, the court determined the marital property portion of the marital home should be calculated as follows:
 {¶ 15} Present value of marital home at time of divorce: *Page 5 
 {¶ 16} $900,000 (appraised value of marital home at best use at time of divorce)
 {¶ 17} discounted at 5% for four years to reflect "present value"
 {¶ 18} = $740,432 (present value of marital home)
 {¶ 19} Dr. Kondik's separate property in marital home:
 {¶ 20} $223,600 (appraised value of marital home at time of marriage)
 {¶ 21} + 3% passive annual appreciation between 1993 and 2007
 {¶ 22} + 35,000 (value of barn)
 {¶ 23} = $ 398,263
 {¶ 24} Equity of Marital home subject to division:
 {¶ 25} $740,432 (present value of marital home at time of divorce)
 {¶ 26} $398,263 (Dr. Kondik's separate property in marital home)
 {¶ 27} 40,943 (line of credit balance)
 {¶ 28} = $301,225 (marital property in equity of marital home subject to division)
 {¶ 29} Mrs. Kondik's share in marital home:
 {¶ 30} $301,225
 {¶ 31} ÷ 2
 {¶ 32} -$13,043 (credit card charge incurred by Mrs. Kondik)
 {¶ 33} = $137,569
 {¶ 34} On appeal, Mrs. Kondik disputes the following: (1) the trial court's calculation of the marital home's appreciation at 3% per year awarded to Dr. Kondik as his separate property in the equity of marital home; (2) the deduction of $35,000 expended in the construction of the barn from the equity of the marital home subject to division; (3) the calculation of the present value of the marital residence at $740,432; and (4) the classification of the Mercedes as Dr. Kondik's separate property.
 {¶ 35} Standard of Review and Law Applicable to Division of MaritalProperty
 {¶ 36} We begin with the recognition that an appellate court will only reverse a trial court's determination of the value of marital property if the court abused its discretion. Lerchbacher v. Lerchbacher, 11th Dist. No. 2001-P-0071, 2002-Ohio-4511, ¶ 10, *Page 6 
citing Boyles v. Boyles, 11th Dist. No. 2000-P-0072, 2001-Ohio-4303, ¶ 12, citing Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131.
 {¶ 37} In a divorce proceeding, the division of marital and separate property is governed by R.C. 3105.171. The statute directs a trial court to determine what constitutes marital property and what constitutes separate property, and, in either case, upon making such a determination, to "divide the marital and separate property equitably between the spouses." R.C. 3101.171(B).
 {¶ 38} Marital property includes real and personal property or an interest in such property owned by one or both of the spouses and was "acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i).
 {¶ 39} Furthermore, property acquired during marriage is presumed to be marital unless it can be shown to be separate. McLeod v. McLeod, 11th Dist. No. 2000-L-197, 2002-Ohio-3710, at ¶ 16, citing Frederick v.Frederick (Mar. 31, 2000), 11th Dist. No. 98-P-0071,2000 Ohio App. LEXIS 1458, at *6.
 {¶ 40} Separate property is defined by R.C. 3105.171(A)(6)(a) to include:
 {¶ 41} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 {¶ 42} "(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage; * * *"
 {¶ 43} "* * *.
 {¶ 44} "(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets[.]" *Page 7 
 {¶ 45} "With regard to separate property, the general rule is that the trial court must disburse such property to the spouse who acquired any interest therein prior to the date of the marriage." Frederick at *15, citing R.C. 3105.171(D).
 {¶ 46} "We will uphold a trial court's characterization of property as separate or marital when the record contains some competent credible evidence to support the trial court's conclusion." Bizjak v.Bizjak, 11th Dist. No. 2004-L-083, 2005-Ohio-7047, ¶ P10, citingBoyles v. Boyles, 11th Dist. No. 2002-P-0097, 2003-Ohio-5351, ¶ 18.
 {¶ 47} Personal Injury Claim Proceeds
 {¶ 48} We begin with the question of whether Dr. Kondik's personal injury proceeds constituted marital or separate property. Mrs. Kondik contends the personal injury award constituted marital property. She argues that, although Dr. Kondik's injuries occurred prior to the marriage, the proceeds of his claim were received during the marriage and therefore were marital property. The law does not support her contention.
 {¶ 49} "Pursuant to R.C. 3105.171(A)(6)(a)(vi), separate property is defined as `compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets[.]' Hence, personal injury settlements are generally characterized as separate property except to the extent that the settlement proceeds reimbursed an injured spouse for lost marital earnings or other expenses paid from marital assets." Lewis v.Lewis, 11th Dist. No. 2002-P-0111, 2003-Ohio-5006, ¶ 38 (citations omitted).
 {¶ 50} Here, Mrs. Kondik does not claim that any portion of Dr. Kondik's personal injury claim proceeds was awarded to reimburse Dr. Kondik for lost martial earnings or *Page 8 
expenses paid from their marital assets. Therefore, the proceeds from Dr. Kondik's personal injury claim were his separate property. Mrs. Kondik's claim that the proceeds constituted marital property because they were received during the marriage was not supported by any case law or statutory authority.
 {¶ 51} Appreciation of the Marital Home
 {¶ 52} We next consider the trial court's division of the appreciation of the marital home, which constitutes the bulk of the couple's marital property.
 {¶ 53} Generally, appreciation of property can be active or passive. Active appreciation, defined as an increase in the fair market value of property that is "due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage," is marital property. R.C. 3105.171(A)(3)(a)(iii); Bizjak at ¶ 12.
 {¶ 54} Passive appreciation, on the other hand, is "an increase in the fair market value of the home due to its location or inflation" and it is separate property pursuant to R.C. 3105.17(A)(6)(a). Bizjak, ¶ 12, citing Boyles at ¶ 41. "Passive appreciation in value of a non-marital property, without the contribution of marital labor or funds, is non-marital." Parks v. Parks (Sept. 7, 1993), 12th Dist. No. CA93-03-043, 1993 Ohio App. LEXIS 4343, *3, citing Worthington v.Worthington (1986), 21 Ohio St.3d 73, 76.
 {¶ 55} We first note that the evidence presented at trial indicates the significant appreciation of the marital home, from $223,600 in 1993 to its current estimated value of $900,000, is primarily attributable to its development potential due to its location, rather than as a result of active contribution by either spouse. Therefore, the appreciation appears to be passive. *Page 9 
 {¶ 56} However, Mrs. Kondik claimed at trial that the appreciation was marital property, and Dr. Kondik did not challenge this characterization. Accordingly, the trial court also adopted this view and Dr. Kondik does not contest this issue on appeal. Therefore, we note that, as a preliminary matter, the issue of whether the evidence supports the active and marital property characterization of the appreciation of the marital home is not before us.
 {¶ 57} Although Dr. Kondik agreed to the general characterization of the appreciation of the marital claims as marital property, he argued at trial that he used a portion of his personal injury proceeds ($35,000) to construct a barn on the property, and therefore the portion of the equity in the house equal to the expended amount to build the barn should be his separate property.
 {¶ 58} The Barn
 {¶ 59} The trial court agreed, stating in its judgment entry, "The Court finds that Husband invested Thirty Five Thousand Dollars ($35,000) of separate funds for the erection of a barn on the property." The court therefore deducted that amount from the appreciation of the home before dividing it. Mrs. Kondik challenges that deduction on appeal.
 {¶ 60} Mrs. Kondik argues that even if the proceeds from his personal injury proceeds are his separate property, the funds were commingled with marital property and Dr. Kodik failed to trace the $35,000 to a separate property source.
 {¶ 61} Regarding a claim of comingling, "[p]rior to the enactment of R.C. 3105.171 in 1991, transmutation — the process of converting separate property into marital property by commingling — was the law in Ohio. However, R.C. 3105.171 has *Page 10 
not completely abolished transmutation. This court held that transmutation can be considered but not without addressing the traceability of funds." Lewis at ¶ 22 (internal citations omitted).
 {¶ 62} R.C. 305171(A)(6)(b) provides that "the commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." See, also, McLeod at ¶ 23.
 {¶ 63} "Separate property is presumed to retain its separate nature as long as it is traceable, regardless of whether it has been commingled with other property." Long v. Long, 176 Ohio App.3d 621, 2008-Ohio-3006, ¶ 39
quoting Jones v. Jones, 4th Dist. No. 07CA25, 2008-Ohio-2476, ¶ 21. "[T]raceability is the focus in determining whether separate property has lost its character after being commingled with marital property." Balogh v. Balogh (Dec. 29, 1995), 11th Dist. No. 94-P-0099,1995 Ohio App. LEXIS 5851, *7, citing Peck v. Peck (1994),96 Ohio App.3d 731, 734. See, also, Knight v. Knight (April 12, 2000), 4th Dist. No. 99CA27, 2000 Ohio App. LEXIS 1760, *12 (the key question is whether an asset may be traced to a separate property source).
 {¶ 64} Here, Dr. Kondik testified he used $35,000 out of the proceeds to build the barn, although he was unable to produce cancelled checks or check registers because his wife refused to produce any financial documents in her possession throughout the litigation. Mrs. Kondik does not dispute that the money came from Dr. Kondik's personal injury proceeds, but claims the proceeds were deposited in a joint bank account and commingled. *Page 11 
 {¶ 65} The mere fact that the proceeds were deposited in a joint account, under the circumstances of this case, however, does not destroy the proceeds' separate property status, and the testimony clearly shows the $35,000 used to construct the barn came from that source. Therefore, the trial court's determination that $35,000 should be deducted before dividing the appreciation of the marital home is supported by competent and credible evidence.
 {¶ 66} Deduction of 3% Annual Rate from Appreciation of MaritalHome
 {¶ 67} The appraiser testified that the houses in the subject area appreciated at a rate of 2% to 3% yearly. Therefore, Dr. Kondik asked the trial court to consider a 3% annual appreciation to be passive, and therefore, his separate property. The trial court agreed, deducting 3% annual appreciation from the appreciation of the marital home before dividing it.
 {¶ 68} On appeal, Mrs. Kondik does not challenge the deduction of an annual appreciation. She, however, questions the mathematical calculation of the appreciation proposed by Dr. Kondik and adopted by the trial court.
 {¶ 69} Our review of the record shows the discrepancy between Mrs. Kondik's and Dr. Kondik's calculation of the amount of appreciation based on a 3% annual rate is due to Dr. Kondik's including the cost of the barn ($35,000) to the value of the home commencing in 1995, the year it was constructed. Because we have determined the cost of the barn to be separate property, the trial court properly included that amount when calculating the 3% annual appreciation considered as Dr. Kondik's separate property.
 {¶ 70} Present Value of Marital Home *Page 12 
 {¶ 71} Finally, the trial court decided the value of the marital home should be discounted to a present value based on Mr. Kohl's testimony that there is a surplus of developed lots in the subject area and as a result it would take the market three or four years to absorb these lots. The trial court calculated its present value based a five percent discount rate for four years, as proposed by Dr. Kondik.
 {¶ 72} On appeal, Mrs. Kondik asserts the trial court should not have calculated the present value of the marital home using an online calculator program offered by Dr. Kondik in his post-trial brief, arguing the online calculator program attached to his post-trial brief could not constitute evidence.
 {¶ 73} In determining the value of marital property, "[o]ur task on appeal is not to require the adoption of any particular method of valuation, but to determine whether, based on all the relevant facts and circumstances, the court abused its discretion in arriving at a value."James v. James (1995), 101 Ohio App.3d 668, 681.
 {¶ 74} "[A] trial court does not abuse its discretion in determining the value of a marital asset when it employs the values presented by the parties." Lerchbacher at ¶ 16, quoting Boyles at ¶ 21. InLerchbacher, we concluded the trial court did not abuse its discretion when it believed appellee's valuation of property over appellant's valuation testimony. Id.
 {¶ 75} Here, Mr. Kohl testified that there is a surplus of developed lots in the subject area, and as a result it would take the market three or four years to absorb these lots, which creates a difficulty in selling the marital home for its best use at its appraised value. Mrs. Kondik did not offer any evidence to refute this testimony, either regarding the time frame it would take the local market to absorb existing developed *Page 13 
lots, or regarding a reduced value of the marital home as a result of the market condition.
 {¶ 76} Based on Mr. Kohl's testimony, Dr. Kondik proposed to the trial court a 5% discount rate for four years for calculating the marital home's present value. For the mathematical calculation, Dr. Kondik attached to its post-trial brief a present value calculator program available on the Internet, which shows that the result of $900,000 discounted by 5% for four years is $740,432.
 {¶ 77} Despite the testimony presented at trial establishing the necessity of discounting the home's appraised value at its best use to reflect a present value, Mrs. Kondik offered the trial court no alternative basis for a calculation of such value.
 {¶ 78} Therefore, we find no abuse by the trial court in its acceptance of evidence presented by Dr. Kondik showing that the extended market time will reduce the market value of the marital real estate below its current value, nor do we find that the court abused its discretion in determining the present value by adopting the methodology proposed by Dr. Kondik, especially in the absence of any alternatives offered by Mrs. Kondik.
 {¶ 79} The Mercedes
 {¶ 80} The last item disputed on appeal by Mrs. Kondik regarding the trial court's division of property involves their 1979 450SL Mercedes, which, along with the 1997 Jeep, the 1994 Dodge Caravan, and the Satoh tractor, was considered to be Dr. Kondik's separate property by the trial court.
 {¶ 81} Dr. Kondik testified at trial that he purchased the Mercedes in 2003 for $8,400 with the money from his personal injury proceeds. Mrs. Kondik maintains the *Page 14 
proceeds were commingled and jointly used by the parties during the marriage and therefore the Mercedes could not be traced to a separate property source.
 {¶ 82} The trial court in its judgment summarily stated these vehicles were purchased with Dr. Kondik's "separate funds" and therefore were not subject to division, except the Dodge Caravan currently in Mrs. Kondik's possession.
 {¶ 83} Here, Dr. Kondik testified that the vehicle was purchased from his personal injury proceeds. On appeal, he maintains that he was unable to trace the vehicle to a separate property source because Mrs. Kondik refused to produce financial documents in her possession throughout the litigation and admitted to selective destruction of financial records, which precluded his ability to trace his separate property in the Mercedes.
 {¶ 84} Pursuant to R.C. 3105.171(E)(3), "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." The trial court must make a factual finding on the record to support a distributive award for financial misconduct. Eddy v. Eddy, 4th Dist. No. 01CA02, 2002-Ohio-4345, ¶ 50. The offended party bears the burden of proving financial misconduct by his or her spouse. Gallo v. Gallo, 11th Dist. No. 2000-L-208, 2002-Ohio-2815, ¶ 43.
 {¶ 85} Here, the trial court awarded Dr. Kondik the Mercedes as his separate property, based on its implicit finding that Mrs. Kondik's financial misconduct prevented Dr. Kondik from being able to trace the Mercedes to his personal injury proceeds. Although the trial court failed to make an express finding, our review of the record *Page 15 
indicates there is sufficient evidence presented by Dr. Kondik for a finding of financial misconduct by Mrs. Kondik warranting the award of the Mercedes to Dr. Kondik. Therefore, on remand, the trial court is instructed to make an express finding of financial misconduct by Mrs. Kondik to support its award of the Mercedes to Dr. Kondik. See, e.g.,Snyder v. Snyder (Dec. 22, 2000), 11th Dist. No. 99-G-2230,2000 Ohio App. Lexis 6108, *31 (the trial court failed to find certain shares of stock to be husband's separate property despite evidence in the record supporting the finding, and this court instructed the trial court to enter that finding upon remand).
 {¶ 86} Mrs. Kondik's first assignment of error is overruled. However, we remand the case for the trial court to enter an express finding of financial misconduct to support its award of the Mercedes to Dr. Kondik.
 {¶ 87} Spousal Support
 {¶ 88} In her second assignment of error, Mrs. Kondik maintains that the trial court erred in its award of spousal support. The trial court awarded Mrs. Kondik $1,000 in spousal support per month for 36 months, or until she remarries or dies.
 {¶ 89} Dr. Kondik's monthly income includes his social security, disability income from his automobile accident, royalty income, and farm rental income, for a total of approximately $3,500. Mrs. Kondik's monthly income includes her social security and pension, for a total of approximately $730.
 {¶ 90} In awarding spousal support, the trial court is required to consider the factors set forth in R.C. § 3105.18(C)(1), which are: (1) the income of the parties; (2) the earning abilities of the parties; (3) the ages and health of the parties; (4) the parties retirement benefits; (5) the duration of the marriage; (6) the appropriateness of the *Page 16 
parties to seek employment outside the home; (7) the marital standard of living; (8) the education of the parties; (9) the assets and liabilities of the parties; (10) the contribution of either party to the other's education; (11) the cost of education of the party seeking support; (12) the tax consequences of a spousal support award; (13) lost income that results from the parties' marital responsibilities; and (14) and other factors the court deems relevant. Gallo at ¶ 38.
 {¶ 91} Here, although the trial court stated in its judgment entry that it considered "the length of the marriage, the education of the parties, the necessary living expenses of the Wife, along with the other factors enumerated in R.C. 3105.18," the entry is devoid of any analysis as to how the court arrived at the amount and duration of spousal support in consideration of the statutory factors.
 {¶ 92} We recognize "a trial court enjoys broad discretion in fashioning an award of spousal support" and thus spousal support will be upheld if it is appropriate and reasonable, Gallo at ¶ 36, citingMatic v. Matic (July 27, 2001), 11th Dist. No. 2000-G-2266,2001 Ohio App. LEXIS 3360. We further recognize that the party challenging the award bears the burden of showing the award was an abuse of discretion. Id. citing West v. West, 9th Dist. No. 01 CA0045, 2002-Ohio-1118.
 {¶ 93} However, when awarding spousal support, the trial court must "indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Kaechele v. Kaechele (1988), 35 Ohio St.3d 93,97. "This court has repeatedly held that `a trial court does not satisfy the holding of Kaechele by merely stating that it considered the factors enumerated in R.C. 3105.18.'" Lerchbacher at ¶ 29, quoting Messina v.Schneider *Page 17 
(Sept. 28, 2001), 11th Dist. No. 2007-P-0073, 2001 Ohio App. Lexis 4433. See, also, Gallo at ¶ 39 (a trial court must indicate the basis for awarding spousal support in sufficient detail for an appellate court to adequately review the issue).
 {¶ 94} Here, the trial court only recited the statutory factors of the length of the marriage, the education of the parties, and the necessary living expenses, without explaining how these factors came to bear on the amount of $1,000 per month and its duration. As inLerchbacher, we "refuse to speculate regarding the deliberate process employed by the trial court in reaching its spousal support award." Id. at ¶ 30, quoting Herman v. Herman (Mar. 28, 1997), 11th Dist. No. 96-P-0194, 1997 Ohio App. Lexis 1223. Without an analysis by the trial court applying the statutory factors to the circumstances of this case, we are unable to perform a meaningful review on Mrs. Kondik's contention that the trial court's award of spousal award is inadequate. Her second assignment of error is sustained and we remand for the trial court to provide its rationale for its award of spousal support both for its amount and its duration.
 {¶ 95} Upon remand, the trial court is instructed to make an express finding of Mrs. Kondik's financial misconduct to support its award of the Mercedes to Dr. Kondik, and to provide its reasons for its award of spousal support.
 {¶ 96} For the foregoing reasons, the judgment of the Portage County Court Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and the case is remanded for further proceedings consistent with this opinion.
DIANE V. GRENDELL, J., concurs, *Page 18 
COLLEEN MARY OTOOLE, J., concurs in part, dissents in part with Concurring/Dissenting Opinion.