[Cite as *Slabe v. Slabe*, 2025-Ohio-4722.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

KIMBERLY SLABE,

    Plaintiff-Appellant/
    Cross-Appellee,

- vs -

BRENDAN SLABE, et al.,

    Defendant-Appellee/
    Cross-Appellant.

CASE NO. 2024-L-075

Civil Appeal from the
Court of Common Pleas,
Domestic Relations Division

Trial Court No. 2021 DR 000508

## OPINION AND JUDGMENT ENTRY

Decided: October 14, 2025
Judgment: Affirmed in part and reversed in part; remanded

*Joseph G. Stafford*, *Kelley R. Tauring*, *Nicole A. Cruz*, and *Shaini L. Gofman*, Stafford Law Co., L.P.A., North Point Tower, 1001 Lakeside Avenue, Suite 1300, Cleveland, OH 44114 (For Plaintiff-Appellant/Cross-Appellee).

*James L. Lane*, Rosenthal Lane, L.L.C., North Point Tower, 1001 Lakeside Avenue, Suite 1720, Cleveland, OH 44114 (For Defendant-Appellee/Cross-Appellant).

MATT LYNCH, J.

{¶1} This matter is before us on the appeal of Kimberly Slabe ("Wife") and the cross-appeal of Brendan Slabe ("Husband") from the final divorce decree issued by the Lake County Court of Common Pleas, Domestic Relations Division, on October 2, 2024. The parties raise highly contested issues related to the trial court's enforcement of the prenuptial agreement, division of property, failure to issue a distributive award, award of spousal support, modification of temporary spousal support, and award of attorney fees.

{¶2} We affirm in part and reverse in part the trial court's judgment. Finding merit with Wife's fifth assignment of error and Husband's first and fourth assignments of error,

we vacate the court's retroactive modification of its temporary spousal support order and remand the court's final spousal support order and division of marital assets for further consideration and findings of fact.

## PROCEDURAL BACKGROUND

{¶3} The parties executed a prenuptial agreement on June 15, 1998, and married on June 20, 1998. They have four emancipated children.

{¶4} After 23 years of marriage, on September 9, 2021, Wife filed a complaint for divorce against Husband, also naming Husband's family's business, Slabe Machine Products, LLC ("SMP"), as a third-party defendant. SMP answered the complaint on December 3, 2021. Husband answered and filed a counterclaim for divorce on December 7, 2021.

{¶5} On March 11, 2022, the trial court granted Wife's motions for temporary spousal support, ordering Husband to pay Wife $3,500.00 per month plus other bills and expenses, effective January 1, 2022, until further order of the court.

{¶6} Wife named additional third-party defendants throughout the proceedings, including Christopher Slabe (Husband's brother and President of SMP) and various trusts and financial entities. The trial court issued temporary restraining orders against the parties and third-party defendants, enjoining them as to the parties' assets and financial accounts. These orders were later dissolved to the extent necessary to permit the sale of SMP to a third party, and Husband was ordered that any proceeds he received be held in escrow in his counsel's IOLTA account.

{¶7} After the sale of SMP, on August 24, 2022, Husband filed a "notice of sale proceeds held by third party entity," wherein he maintained that he did not have the ability to place any sale proceeds into the possession of his counsel because the equity from

Case No. 2024-L-075

the sale was transferred directly into a successor entity, Oppidum Holding Co. ("Oppidum"). This notice describes the nature of SMP's assets, Husband's interest in those assets, and the sale of SMP, all of which are relevant to this appeal:

SMP was founded in 1939 by Mr. Slabe's family. Both Mr. Slabe and his brother, Christopher Slabe, were gifted stock in the company by their parents in a piecemeal fashion beginning when they were teenagers. That stock was held in multiple trusts created long before this marriage (See Ex. A). The trusts named Mr. Slabe, his brother, their children and their parents as beneficiaries.

Mr. Slabe did not own a direct interest in SMP at the start of these divorce proceedings. Rather, SMP was owned by six individual trusts established by Mr. Slabe's family. Mr. Slabe, along with his children and parents, are beneficiaries of only three of the six trusts (hereafter referred to collectively as the "Trusts").

Mr. Slabe and his wife also entered into a Prenuptial Agreement prior to their marriage which included specific provisions related to SMP. A redacted copy of the Prenuptial Agreement is attached as Exhibit B. Among other relevant provisions, the Agreement references the Trusts ownership and states the following:

Kim shall have no claim to nor right in Brendan's interest in [SMP] . . . including any accretion in value, and Kim specifically agrees that:

The parties agree that Kim waives, gives up, relinquishes, and shall have no claim nor right to any share or interest in Brendan's [SMP] shareholdings or other rights and incidents of ownership in and to [SMP], . . . whether such claim or right accrues and exists during Brendan's lifetime, as in the case of divorce, dissolution or marriage, action for separate property, or other such proceedings . . . .

. . .

The provisions of this Agreement are intended to exclude Brendan's interest and ownership in [SMP] from division or other consideration in the event of divorce or Brendan's death before Kim while married to Kim. In the event of divorce all marital assets other than Brendan's interest in [SMP] and all incidents thereof can and will be equitably divided according to the laws governing divorce.

Case No. 2024-L-075

. . .

Mr. Slabe received no cash or benefits from the sale of SMP. Instead, a successor entity was formed by the Trustees of the Trusts prior to the date of sale. The equity from the sale of SMP was transferred directly into the successor entity, [Oppidum], in accordance with an I.R.C. 368(a)(1)(F) reorganization. The Internal Revenue Code defines such a reorganization as "a mere change in identity, form or place of organization of one corporation, however effected". I.R.C. 368(a)(1)(F).

[Oppidum] is owned by the same six trusts that previously owned SMP (see attached Exhibit C). Oppidum is a functioning business entity registered with the Ohio Secretary of State (see Exhibit D). The company has current and future interests in market investments, real estate, rental properties and charterships. The President of Oppidum is Christopher Slabe, who holds the majority of stock and controls the voting interests of the entity. He is the only individual who can authorize the transfer of funds from the company to the Trusts (which own Oppidum). In accordance with the Oppidum Regulations (see Exhibit E), Brendan Slabe cannot direct the transfer of any funds from Oppidum to his counsel, or anyone else. Mr. Slabe does not have an ownership interest in Oppidum, only the Trusts do. While he is a Trustee of three of the six Trusts, Mr. Slabe does not hold voting shares in Oppidum and cannot direct the transfer of any Oppidum assets.

There are no plans or intention to liquidate any of the assets held by Oppidum into the ownership of the Trusts. Rather, Mr. Slabe and his brother intend to work together to build Oppidum, a successor company to SMP, into a successful business. . . . In the meantime, Mr. Slabe has an employment contract with UPC Holdings III Corp., the company which purchased SMP. That employment contract pays Mr. Slabe an annual salary of $175,000, and nothing more.

{¶8} The trial court held an evidentiary hearing on July 14 and 17, 2023, solely to determine the validity of the Prenuptial Agreement. On August 29, 2023, the court concluded that the agreement was valid and enforceable and that, pursuant to its terms, any interest Husband has in SMP directly or by way of a trust or otherwise is his separate property. Wife filed an interlocutory appeal from this judgment entry, which we dismissed for lack of a final, appealable order. *See Slabe v. Slabe*, 2023-Ohio-4485 (11th Dist.).

{¶9} The final divorce trial was held over five days, beginning on July 8, 2024. On July 12, 2024, the trial court directed the sale of the parties' marital residence, which

Case No. 2024-L-075

was sold within the next two months for approximately $1,300,000.00, minus costs of necessary repairs and maintenance.

{¶10}  On October 2, 2024, the trial court granted the parties a divorce on grounds of incompatibility and having lived separate and apart for one year.

{¶11}  In the final divorce decree, the court found the Prenuptial Agreement is controlling with respect to Husband's interests in SMP (now Oppidum) and related Trusts. The court awarded Wife the proceeds from the sale of the marital residence (approximately $1,200,000.00) and from the insurance payment for her recently totaled vehicle ($47,392.00), as well as Husband's 401(k) (approximately $1,270,000.00) and Roth IRA (approximately $201,000.00).  The court awarded Husband the motor vehicle titled in his name, a 2018 Range Rover.  Each party was awarded the personal property in his or her own possession as of the date of the decree.  The court found there were no marital liabilities.  The court also ordered Husband to pay Wife spousal support in the amount of $7,500.00 per month, subject to the court's continuing jurisdiction; retroactively adjusted the temporary spousal support order from $3,500.00 to $7,500.00 per month in a lump-sum judgment of $116,000.00, plus interest at the statutory rate; awarded Wife a judgment of $300,000.00 as and for her reasonable attorney fees and witness fees, plus interest at the statutory rate; and ordered Husband to pay the court costs.

{¶12}  The court also made the following findings of fact regarding the sale of SMP:

[Oppidum] is an entity which was created pursuant to an "F" reorganization of [SMP].  The [SMP] stock held by the trusts was sold to [Oppidum] and then sold to UPC Holdings III Corp.  The sale proceeds were received by Oppidum and placed in investment accounts with Charles Schwab and a checking account with Huntington Bank.  The sale [proceeds] from UPC Holdings III were approximately $64,500,000.00 which includes stock in UPC Holdings III valued at $6,500,000.00.  In addition, Oppidum received [SMP] assets not included in the sale in the approximate amount of $26,500,000.00.

Case No. 2024-L-075

{¶13} From this decree, Wife filed a notice of appeal and Husband filed a notice of cross-appeal. We granted a stay pending appeal as to the transfer of Husband's retirement assets and the payment of attorney fees, the latter on the condition that Husband post a supersedeas bond in the amount of $300,000.00.

{¶14} Wife asserts the following five assignments of error on appeal:

[1.] The trial court's enforcement of the June 15, 1998 prenuptial agreement is an abuse of discretion and is contrary to Ohio law. The testimony and evidence revealed that the appellee made material misrepresentations to the appellant by claiming assets in the agreement that he did not own.

[2.] The trial court conducted the proceedings and issued rulings and a decision which are contrary to law, amount to an abuse of discretion, and a violation of appellant's due process rights.

[3.] The trial court's division of property constitutes an abuse of discretion under Ohio Revised Code Section 3105.171 as the trial court failed to properly identify marital assets and failed to properly classify marital and separate property, resulting in an inequitable division of property.

[4.] The trial court's failure to award the appellant a distributive award under Ohio Revised Code Section 3105.171(E) is contrary to the record and constitutes an abuse of discretion.

[5.] The trial court's spousal support award is an abuse of discretion and contrary to Ohio law under Ohio Revised Code Section 3105.18(C).

{¶15} Husband also asserts five assignments of error on cross-appeal:

[1.] The trial court erred and abused its discretion by awarding 100% of the marital property to Appellant.

[2.] The trial court erred and abused its discretion by failing to consider and/or determine Appellant's earning capacity when awarding her spousal support.

[3.] The trial court erred and abused its discretion by awarding Appellant spousal support in the amount of $7,500.00 per month without a termination date.

[4.] The trial court erred and abused its discretion by retroactively modifying temporary spousal support and awarding Appellant $116,000.00.

[5.] The trial court erred and abused its discretion by awarding appellant $300,000.00 as and for reasonable attorney fees and witness fees.

{¶16} We consider the parties' arguments in a consolidated fashion for ease of analysis.

## PRENUPTIAL AGREEMENT

{¶17} "It is well settled in Ohio that public policy allows the enforcement of prenuptial agreements." *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 466 (1994), citing *Gross v. Gross*, 11 Ohio St.3d 99 (1984), paragraph one of the syllabus. "Such agreements are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce." *Gross* at paragraph two of the syllabus.

{¶18} "When an antenuptial agreement provides disproportionately less than the party challenging it would have received under an equitable distribution, the burden is on the one claiming the validity of the contract to show that the other party entered into it with the benefit of full knowledge or disclosure of the assets of the proponent." *Fletcher* at paragraph one of the syllabus. "The burden of proving fraud, duress, coercion or overreaching, however, remains with the party challenging the agreement." *Id*.

{¶19} On review, "[t]his court will not reweigh the evidence introduced in a trial court; rather, we will uphold the findings of the trial court when the record contains some competent evidence to sustain the trial court's conclusions." *Id*. at 468, citing *Ross v. Ross*, 64 Ohio St.2d 203 (1980). "In addition, we will indulge all reasonable presumptions

Case No. 2024-L-075

consistent with the record in favor of lower court decisions on questions of law." *Id*., citing *In re Sublett*, 169 Ohio St. 19 (1959).

<u>Wife's First Assignment of Error</u>

{¶20} In her first assignment of error, Wife contends that the trial court's enforcement of the Prenuptial Agreement is an abuse of discretion and contrary to law. Wife claims the evidence revealed Husband made material misrepresentations to her by claiming assets in the Prenuptial Agreement that he did not own.

{¶21} In its entry upholding the agreement, the trial court found the value of Husband's interest in SMP as of June 15, 1998, was listed in the agreement as "24.4% of stock, held in trust - $2,500,000," and that the agreement explained, "valuation is based on current estimate of fair market value of company, but without discounting for minority ownership, buy-sell agreement, retention trust or other factors." Wife argued this was a fraudulent misrepresentation by Husband that vitiates the Prenuptial Agreement, based on her contention that Husband owned zero interest in SMP at the time of the marriage.

{¶22} To succeed on her claim of fraudulent misrepresentation, Wife was required to establish the essential elements of fraud. *See Bockelman v. Griffin*, 2025-Ohio-807, ¶ 18 (11th Dist.), citing *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502 (1998) (the elements of fraudulent misrepresentation are essentially the same as those for fraud in the inducement). "'The elements of an action in actual fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance

Case No. 2024-L-075

upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.'" *Id.*, quoting *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987).

{¶23} The trial court rejected Wife's fraud claim, concluding as follows:

Whether [Husband] knowingly made a material misrepresentation with respect to any interest he may have had in SMP by a trust or otherwise does not invalidate the parties' agreement in this case.

The purpose of the second requirement in the *Gross* test is to prevent concealment of a valuable asset or assets where the party waives their claim to all of the other spouse's property.

In this case, [Wife] waived any claim she might have had to one particular asset, i.e., [Husband's] interest, if any, in SMP.

Because [Wife] knew about SMP and that it was a family business, which her father-in-law insisted stay within the bloodline, there was not a material misrepresentation.

The agreement was fair at the time of its execution.

{¶24} There is competent, credible evidence in the record to support the trial court's conclusion that any misrepresentation made by Husband regarding his ownership in SMP was not material and, therefore, not fraudulent. Wife testified that she did not marry Husband for his money, she understood the nature of SMP as a generational family business, and she did not sign the Prenuptial Agreement because of Husband's disclosure that he held SMP stock in trust valued at $2,500,000.00. There is no evidence in the record to support a conclusion that, had Husband disclosed he owned zero interest in SMP at that time, Wife would not have agreed to waive any claim she might have had to Husband's interest in SMP. Accordingly, Wife did not meet her burden to prove there was a fraudulent misrepresentation upon which she relied that caused her to execute the Prenuptial Agreement.

{¶25} Wife has not demonstrated that the trial court erred in concluding the parties' Prenuptial Agreement is valid and enforceable.

{¶26} Her first assignment of error is without merit.

## DUE PROCESS

### Wife's Second Assignment of Error

{¶27} In her second assignment of error, Wife contends the trial court conducted the proceedings and issued rulings and a decision that are contrary to law, amount to an abuse of discretion, or violated Wife's due process rights.

{¶28} Wife claims that the trial court's conduct towards her and her counsel bordered on utter disdain and that the transcripts of the proceedings do not do justice concerning the trial court's attitude and demeanor towards them. This court is unable to review such a claim. Such matters are within the exclusive jurisdiction of the Supreme Court of Ohio. *Sherrick v. Page*, 2024-Ohio-2600, ¶ 17 (11th Dist.), citing R.C. 2701.03(A) ("If a judge of the court of common pleas allegedly . . . has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, . . . any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court in accordance with division (B) of this section.").

{¶29} Wife further asserts that the trial court's exclusion of her witnesses and evidence, as well as its negative and critical disposition towards Wife and her counsel, resulted in unfair and inequitable rulings and decisions, including the enforcement of the Prenuptial Agreement, the classification and allocation of property, and the award of spousal support. We disagree.

{¶30} Many of Wife's complaints about the trial court's conduct in this matter involve courtroom procedure and the admission or exclusion of evidence. These are

issues that lie inherently within the trial court's sound discretion. *See, e.g., Untied v. J.J. Detweiler Ents., Inc.*, 2008-Ohio-838, ¶ 57 (5th Dist.) ("The trial court has broad discretion to control the proceedings before it."); *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus ("The admission or exclusion of relevant evidence rests within the sound discretion of the trial court."). When this type of ruling is challenged on appeal, the task of a reviewing court is to look at the totality of the circumstances and determine whether the trial court acted unreasonably, arbitrarily, or unconscionably. *See Steiner v. Steiner*, 2003-Ohio-1904, ¶ 11 (5th Dist.). However, Wife has not assigned many of these rulings as error nor does she argue under this assignment of error that they amount to an abuse of discretion. Rather, she maintains that the trial court's actions, taken as a whole, prevented her from a fair and impartial trial, thereby depriving her of due process.

{¶31} "Both the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution guarantee due process of law, and thus guarantee 'a reasonable opportunity to be heard after a reasonable notice of such hearing.'" *Short v. Short*, 2019-Ohio-5315, ¶ 32 (11th Dist.), quoting *Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn.*, 28 Ohio St.3d 118, 125 (1986). "The question of whether due process requirements have been satisfied presents a legal question we review de novo." *Id*. at ¶ 31.

{¶32} Wife complains she did not have notice that the validity and enforceability of the Prenuptial Agreement was to be tried at the July 14 and 17, 2023 hearing; she did not have prior notice of the time limitations for each party to present their case and cross-examine witnesses; and the trial court prevented her from presenting her case at both the evidentiary hearing and the final trial by quashing subpoenas and not permitting her counsel to finish his cross-examination of witnesses.

Case No. 2024-L-075

{¶33} In an April 29, 2022 order, the magistrate scheduled an evidentiary hearing for February 23-24, 2023, regarding the validity and enforceability of the Prenuptial Agreement. In the order, the magistrate noted that Wife objected to the hearing but that the dates and times were confirmed with counsel in open court. The magistrate explained in three paragraphs its reasons for scheduling a separate evidentiary hearing, including the burden of proof and case law in support. The order also advised the parties as to the exchange and filing of exhibit and witness lists prior to the hearing. A separate "Notice of Hearing" was issued, again describing the February 23-24, 2023 dates as an "Evidentiary Hearing regarding whether Antenuptial agreement is valid and enforceable," which was "[c]onfirmed with Attorneys in open court on 04/27/2022." The court denied Wife's motion to set aside the magistrate's order. In a "Notice of Hearing" issued on January 12, 2023, "Re: Prenuptial Agreement," the evidentiary hearing was continued to July 14 and 17, 2023. The court also issued an order on March 31, 2023, sua sponte ordering that "[a]ll pending matters, with the exception of the ante nuptial agreement [sic], are held for final hearing." The court denied Wife's July 11, 2023 motion to continue the hearing. At the evidentiary hearing, both parties received a full day to make a presentation of evidence. The trial court did stop Wife's counsel from continuing cross-examination of certain witnesses, but only after he repeatedly refused to move on from asking repetitive or irrelevant questions.

{¶34} On August 4, 2023, the court issued a trial order scheduling the case for a five-day final trial on September 25 through 29, 2023. The order provided that "[Wife] shall have two days to present her case, [Husband] shall have two days to present his case[,] [SMP] shall have one day to present its case. Cross-examination shall be limited to one hour per party and one hour per third party witness. A continuing objection shall

Case No. 2024-L-075

be used in place of duplicative objections." The order stated that "[c]ounsel represented to the Court that counsel is available for the trial date(s) set forth herein and that the amount of time set for trial is sufficient to fully litigate the issues in this matter," and set forth deadlines for discovery, affidavits, settlement proposals, joint stipulations, trial briefs, witness and exhibit lists, and expert reports. After a pre-trial, the matter was continued to July 8-12, 2024. The court issued another trial order on January 4, 2024, which included the same information as the first, including the statement that counsel had represented in open court their availability for the trial dates and that the amount of time set for trial was sufficient. Although provided two days to present her case, Wife rested after one and one-half days.

{¶35} Wife had subpoenaed Husband's father, Edward Slabe, to appear for all five days of trial. The court quashed the subpoena, finding that it was harassing, subjected the non-party to an undue burden, and was issued in direct contradiction and violation of three of the court's prior orders. The same thing occurred for other witnesses Wife subpoenaed for multiple days of trial. The trial court informed counsel it would have granted the subpoenas had they been appropriately limited to one day.

{¶36} The record does not support Wife's position that she was deprived of due process regarding either the evidentiary hearing or the final trial.

{¶37} Her second assignment of error is not well taken.

## DIVISION OF PROPERTY

{¶38} We turn now to the parties' arguments related to the trial court's classification of marital and separate property and its division of the marital assets and debt. These issues are governed by R.C. 3105.171.

Case No. 2024-L-075

{¶39} "Marital property" may include (i) all real and personal property currently owned by one or both of the spouses that was "acquired by either or both of the spouses during the marriage"; (ii) all interest that one or both of the spouses currently has in any real or personal property that was "acquired by either or both of the spouses during the marriage"; and (iii) "income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a). By statute, "marital property" does not include any "separate property." R.C. 3105.171(A)(3)(b).

{¶40} "Separate property" may include "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage"; and "[p]assive income and appreciation acquired from separate property by one spouse during the marriage." R.C. 3105.171(A)(6)(a)(ii)-(iii). "'Passive income' means income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4).

{¶41} "[T]he party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." (Citations omitted.) *Speece v. Speece*, 2021-Ohio-170, ¶ 35 (11th Dist.). "A trial court's characterization of property as separate or marital will be upheld when the record contains some competent credible evidence to support the trial court's conclusion." *Id*. at ¶ 103.

{¶42} "In divorce proceedings, the court shall . . . determine what constitutes marital property and what constitutes separate property. . . . [U]pon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section." R.C. 3105.171(B). "Except as provided in

this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section." R.C. 3105.171(C)(1). The R.C. 3105.171(F) factors include, but are not limited to, the duration of the marriage, the assets and liabilities of the spouses, the liquidity of the property to be distributed, the tax consequences of the property division, and any retirement benefits of the spouses (excluding social security). "In any order for the division or disbursement of property or a distributive award made pursuant to this section, the court shall make written findings of fact that support the determination that the marital property has been equitably divided . . . ." R.C. 3105.171(G).

{¶43} "A trial court is vested with broad discretion when fashioning a division of both marital property and marital debt." *Calkins v. Calkins*, 2016-Ohio-1297, ¶ 22 (11th Dist.). "However, a trial court's discretion is not unbridled. The award need not be equal, but it must be equitable. A reviewing court will not substitute its judgment for that of the trial court unless the trial court's decision is unreasonable, arbitrary or unconscionable." (Internal citations omitted.) *Bisker v. Bisker*, 69 Ohio St.3d 608, 609 (1994); *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131 (1989) (a trial court's division will not be reversed on appeal absent an abuse of discretion). "'When applying this standard of review, we must view the property division in its entirety, consider the totality of the circumstances, and determine whether the trial court abused its discretion when dividing the spouses' marital assets and debts.'" *Calkins* at ¶ 22, quoting *Baker v. Baker*, 2007-Ohio-7172, ¶ 28 (4th Dist.), citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 222 (1984).

{¶44}  Here, the trial court classified the following, with their approximate valuation, as marital property: net proceeds from the sale of the marital home ($1,200,000.00); Husband's 401k ($1,270,000.00); Husband's Roth IRA ($201,000.00); insurance proceeds from an accident that totaled Wife's vehicle ($47,392.00); Husband's Range Rover (no value listed).  The court also noted there are several other vehicles titled in the parties' names that are used by their children and Husband uses an Audi R8 that is owned by Oppidum.

{¶45}  The trial court found no marital liabilities.  Regarding Husband's debt in the approximate amount of $530,000.00 (originally owed to SMP and transferred to Oppidum as part of the transactions related to the sale of SMP), the trial court found that Husband owes this debt to himself and that it would not be equitable to treat the debt as a marital liability.  With respect to SMP, the trial court found as follows:

17. [Oppidum] is an entity which was created pursuant to an "F" reorganization of [SMP].  The [SMP] stock held by the trusts was sold to [Oppidum] and then sold to UPC Holdings III Corp.  The sale proceeds were received by [Oppidum] and placed in investment accounts with Charles Schwab and a checking account with Huntington Bank.  The sale proceed[s] from UPC Holdings III were approximately $64,500,000.00 which includes stock in UPC Holdings III valued at $6,500,000.00.  In addition, Oppidum received [SMP] assets not included in the sale in the approximate amount of $26,500,000.00.

18. The separate property assets of Husband are in the trusts which own 49% of Oppidum.

19. In addition to Oppidum being controlled by [Husband's brother's] 51% interest in Oppidum through his trusts, Husband's trusts include "spend-thrift" provisions which preclude the use of trust assets to pay a beneficiary's debts excluded by the trust's provisions."

{¶46}  Based on these findings and the conclusion that "[t]he parties' prenuptial agreement is controlling with respect to Husband's interests in SMP, Oppidum, and his trusts," the trial court determined that a distributive award to Wife of Husband's separate

Case No. 2024-L-075

property was not possible. This was "the basis for the Court's decision with respect to the marital assets."

{¶47} The trial court awarded Wife the proceeds from the sale of the marital residence, free and clear of any claim by Husband, the proceeds from the insurance payment for her Maserati, Husband's 401k, and Husband's Roth IRA. The trial court awarded Husband the Range Rover titled in his name. Each party was awarded their own bank accounts and personal property in their possession.

<u>Wife's Third Assignment of Error</u>

{¶48} In her third assignment of error, Wife contends that the trial court's division of property constitutes an abuse of discretion under R.C. 3105.171.

{¶49} Wife first argues that the trial court failed to assign value to Husband's Range Rover and the Audi R8 that he drives. Husband testified that the value of his Range Rover was about $22,000.00 or $25,000.00; his father had purchased a new Range Rover with an approximate value of $112,000.00 or $120,000.00; and the Audi R8 is owned by Oppidum and is probably worth between $140,000.00 and $150,000.00. Wife testified that Husband drives two Range Rovers, including one that was recently purchased for over $300,000.00, and that the Audi R8 is valued at $250,000.00.

{¶50} Given the distribution of marital property in this case, we conclude that it was equitable to award Husband the vehicle titled in his name, regardless of its value. The trial court's failure to assign a value to Husband's Range Rover—the only marital asset he was awarded—was not prejudicial to Wife. Moreover, the trial court did not err in failing to assign a value to the Audi R8, because there is evidence in the record supporting the trial court's finding that the vehicle is owned by Oppidum and, therefore, is not marital property.

Case No. 2024-L-075

{¶51} Wife next argues that the trial court failed to identify, value, and allocate two yachts. Wife testified that Husband, his brother Christopher, and their father Edward purchased a 90-foot Viking for $12 million and a smaller boat they use for fishing. However, she has directed us to no evidence that Husband has an ownership interest in any yacht. Rather, the evidence shows that Edward, through BNH Coastal Charters, LLC, purchased a 66-foot yacht in September 2022 for $3,375,000.00 with a wire transfer originating from an account owned by Oppidum. BNH Coastal Charters, LLC, is an Ohio limited liability company in which Edward has a 100% membership interest. Christopher also testified that Husband has no ownership interest in the boat, and it was purchased by their father with a loan from Oppidum. On this evidence, we conclude that it was not error for the trial court to omit the yacht from the final divorce decree.

{¶52} Wife's final argument under her third assignment of error is that the trial court erred when it failed to award her 50% of the marital value and appreciation in Husband's interest in SMP. Wife claims that all of Husband's interest in SMP at the time of its sale to Oppidum was acquired during the marriage and held by Trusts formed during the marriage and, therefore, was not subject to the Prenuptial Agreement. As a result, Wife contends, the trial court's failure to acknowledge the marital value and appreciation of Husband's interest in SMP was an abuse of discretion resulting in a grossly inequitable and unreasonable division of property under R.C. 3105.171.

{¶53} Husband responds that the trial court properly determined his ownership interest in SMP was his separate property pursuant to the Prenuptial Agreement. According to Husband, he has a beneficial interest in and is the trustee of three irrevocable trusts. These Trusts—along with the Trusts in which his brother has a

beneficial interest—hold an ownership interest in Oppidum, which holds the proceeds from the sale of SMP, and as such are expressly covered by the Prenuptial Agreement.

{¶54} The relevant provision of the parties' Prenuptial Agreement states:

The parties agree that [Wife] waives, gives up, relinquishes, and shall have no claim nor right to any share or interest in [Husband's SMP] shareholdings or other rights and incidents of ownership in and to [SMP], including any of its successors, or any of its subsidiary companies or affiliates or any of its related business entities now owned or hereafter acquired, including any accretion in value, whether such claim or right accrues and exists during [Husband's] lifetime, as in the case of divorce, dissolution or marriage, action for separate property, or other such proceeding or upon [Husband's] death as a claim against his estate for or based upon his ownership of said property and rights in said property.

{¶55} Because we upheld the validity and enforceability of the Prenuptial Agreement in Wife's first assignment of error, we conclude the trial court did not err in determining that the Trusts, which hold the sale proceeds of SMP, are Husband's separate property and are not subject to division pursuant to the plain terms of the agreement.

{¶56} Wife's third assignment of error is without merit.

Wife's Fourth Assignment of Error

{¶57} In her fourth assignment of error, Wife contends the trial court's failure to award her a distributive award under R.C. 3105.171(E) is contrary to the record and constitutes an abuse of discretion.

{¶58} "'Distributive award' means any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, *that are made from separate property or income, and that are not made from marital property* and do not constitute payments of spousal support, as defined in section 3105.18 of the Revised

Case No. 2024-L-075

Code." (Emphasis added.) R.C. 3105.171(A)(1). Distributive awards may be made for several reasons:

> [1.] [A] distributive award is proper "[i]f a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets." R.C. 3105.171(E)(4). [2.] A domestic relations court may also "make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome." R.C. 3105.171(E)(2). [3.] And, more broadly, a distributive award can be made "to facilitate, effectuate, or supplement a division of marital property." R.C. 3105.171(E)(1).

*Hall v. Bricker*, 2024-Ohio-1339, ¶ 36 (10th Dist.).

{¶59} Wife argues that she was entitled to a distributive award because Husband engaged in financial misconduct and the trial court erred in finding it could not issue a distributive award under R.C. 3105.171(E) from Husband's separate property, i.e., his interest in SMP. We disagree and instead find merit with Husband's position that the provisions in R.C. 3105.171 relating to distributive awards do not apply here because the Prenuptial Agreement specifically addresses how to distribute Husband's separate property.

{¶60} The parties clearly intended to supplant R.C. 3105.171 as to Husband's separate property interest in SMP, as evidenced by the following provision in the Prenuptial Agreement:

> The provisions of this Agreement are intended to exclude [Husband's] interest and ownership in [SMP] from division or other consideration in the event of divorce or [Husband's] death before [Wife] while married to [Wife]. In the event of divorce all marital assets other than [Husband's] interest in [SMP] and all incidents thereof can and will be equitably divided according to the laws governing divorce.

Not only is Husband's interest in SMP his separate property, but the parties specifically agreed that the court would not consider the same in these proceedings. Thus, the trial

court had no discretion to award Wife any interest in Husband's separate SMP property interest. *See Carmen v. Carmen*, 2012-Ohio-3255, ¶ 51 (8th Dist.) (because the parties' antenuptial agreement specifically addressed how to handle separate property, the trial court held that it supplanted the provisions of R.C. 3105.171), citing *Radcliffe v. Radcliffe*, 1994 WL 151679, *1-3 (2d Dist. Apr. 27, 1994) (interpreting specific provisions of the parties' antenuptial agreement as a waiver of any rights the parties might otherwise have had under R.C. 3105.171); *Steinke v. Steinke*, 2006-Ohio-4185, ¶ 10 (3d Dist.) ("Although appreciation on separate property during the parties' marriage is generally marital property, a valid antenuptial agreement can exclude that appreciation."), citing *Millstein v. Millstein*, 2002-Ohio-4783, ¶ 98 (8th Dist.).

**{¶61}** In short, a distributive award cannot be made from marital assets, and the court properly determined it could not make a distributive award from Husband's separate property interest in SMP. Therefore, even had the court found that Husband engaged in financial misconduct, it could not have made a distributive award to Wife under these facts.

**{¶62}** Wife's fourth assignment of error is without merit.

<u>Husband's First Assignment of Error</u>

**{¶63}** In his first assignment of error, Husband contends the trial court abused its discretion by awarding nearly 100% of the marital property to Wife and by failing to classify the promissory note he owes to Oppidum as marital debt.

**{¶64}** Initially, we reject Wife's response that Husband's argument falls under the doctrine of invited error. Wife inaccurately states the trial court adopted a division of property that was initially presented by Husband's counsel as an appropriate outcome

Case No. 2024-L-075

during trial. Rather, in his "Proposed Findings of Fact and Conclusions of Law," filed August 12, 2024, Husband proposed the following:

189. The proceeds from the sale of the marital residence after payment in full of the debt owed to [Oppidum] shall be divided equally between the parties.

190. [Husband's] 401k shall be divided equally between the parties as of December 20, 2021.

191. [Husband's] Roth IRA shall be divided equally between the parties as of December 20, 2021.

192. [Wife] shall be entitled to 100% of the insurance proceeds from the 2018 Maserati Levante.

193. The 2015 Land Rover Range Rover shall be allocated 100% to [Husband].

194. Each party shall retain sole ownership of their respective bank accounts.

195. Each party shall retain sole obligation of their respective debts unless expressly set forth herein.

{¶65} We next address Husband's argument that the trial court erred by failing to consider the promissory note he owes to Oppidum for the $530,000.00 loan he took from SMP during the marriage to help purchase the marital residence.

{¶66} "'Marital debt has been defined as any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose.'" *Hall*, 2024-Ohio-1339, at ¶ 111 (10th Dist.), quoting *Sangeri v. Yerra*, 2020-Ohio-5520, ¶ 48 (10th Dist.), citing *Ketchum v. Ketchum*, 2003-Ohio-2559, ¶ 47 (7th Dist.). Naturally, this includes a loan taken for any expenditure married couples make. *E.g.*, *Nemeth v. Nemeth*, 2008-Ohio-3263, ¶ 50 (11th Dist.). "Like assets, debts accumulated during the marriage are generally presumed to be marital unless it can be proved they are separate." *Hall* at ¶ 110; *accord Nemeth* at ¶ 50. "Accordingly, when a debt is incurred during the marriage,

Case No. 2024-L-075

the burden is on the party seeking to have the debt classified as separate debt to demonstrate by a preponderance of the evidence that the debt was the separate obligation of the other spouse." *Id.*; *accord Brady v. Brady*, 2008-Ohio-1657, ¶ 38 (11th Dist.). "Although R.C. 3105.171 does not explicitly address the division of marital debt, it is nonetheless subject to allocation as part of the trial court's distribution of marital property." *Id.* at ¶ 111. "As such, allocation of marital debt is guided by the same equitable factors contained in R.C. 3105.171." *Id.*; *accord Byers v. Byers*, 2010-Ohio-4424, ¶ 18 (4th Dist.).

{¶67} Here, the trial court found that "Husband's debt in the approximate amount of $530,000.00 was originally owed to [SMP], his separate asset. The debt was transferred to Oppidum as part of the transactions related to the sale of [SMP]. Essentially Husband owes this debt to himself, and it would not be equitable to treat the debt as a marital liability."

{¶68} Husband testified that he took the loan from SMP to use towards the purchase of the marital residence and that $3,172.00 is being withheld from his paychecks for payment towards the note. However, the paystubs attached to his 2023 and 2024 Affidavits of Income, Expenses and Property do not identify a deduction of $3,172.00, or any other amount, for the loan. Additionally, it is undisputed that the promissory note is not secured by a mortgage on the marital residence. We therefore conclude the trial court's finding that the promissory note was a personal loan from Husband's separate asset is supported by a preponderance of the evidence.

{¶69} This finding resulted in the marital residence being unencumbered by marital debt and, therefore, a marital asset entirely subject to division. The court awarded the entire asset to Wife, along with Husband's retirement accounts.

Case No. 2024-L-075

{¶70} Husband argues that merely because the court could not issue a distributive award from his separate property interest in SMP, a premarital family business, he should not have been precluded from any rights to marital property.

{¶71} While we do not agree that Husband was "punished" for his premarital interest in SMP, we do conclude this matter must be remanded for the court to delineate the basis for its division of marital assets. The only explanation given for the division of marital assets is found under the section entitled "Distributive Award," where the court found it could not make a distributive award from Husband's interest in SMP and then stated, "This factor is the basis for the Court's decision with respect to the marital assets." However, a distributive award from marital property is contrary to law. *See Hall*, 2024-Ohio-1339, at ¶ 39 ("R.C. 3105.171(A) plainly states that distributive awards 'are not made from marital property.'"). A court speaks only through its journal entries. While it might be presumed that the court determined equitable considerations demanded Wife receive nearly all the marital assets, the court did not make this explicit finding anywhere in the divorce decree, and we will not make such a presumption on appeal.

{¶72} Accordingly, we find merit with Husband's first assignment of error. On remand, the trial court must provide reasoning for any unequal division of marital assets.

## SPOUSAL SUPPORT

{¶73} Next, we address the parties' arguments pertaining to the trial court's award of spousal support. These issues are governed by R.C. 3105.18.

{¶74} "In divorce . . . proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party." R.C. 3105.18(B). "In determining whether spousal support is appropriate

and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

Case No. 2024-L-075

R.C. 3105.18(C)(1).

{¶75}   When making a spousal support award, "the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable, and in accordance with the law." *Kaechele v. Kaechele*, 35 Ohio St.3d 93 (1988), paragraph two of the syllabus; *Kondik v. Kondik*, 2009-Ohio-2300, ¶ 93 (11th Dist.).   To satisfy this standard, the trial court must provide a factual basis for the award rather than simply stating it considered the factors in R.C. 3105.18(C)(1).   *Coxon v. Coxon*, 2025-Ohio-2395, ¶ 98 (11th Dist.), citing *Nelson v. Nelson*, 2022-Ohio-658, ¶ 6 (11th Dist.).   "In rendering its decision, the trial court is in the best position to observe the witnesses, which 'cannot be conveyed to a reviewing court by a printed record.' Moreover, we are 'guided by the presumption that the trial court's findings were indeed correct.'" *Nelson* at ¶ 6, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988).

{¶76}   A trial court has broad discretion to decide what award of spousal support is equitable based upon the facts and circumstances of each case.   *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990).   Thus, we review decisions regarding spousal support under an abuse of discretion standard.   *Adante v. Adante*, 2024-Ohio-5371, ¶ 9 (11th Dist.).

{¶77}   In the parties' respective proposed findings of fact and conclusions of law, Husband proposed a spousal support order in the amount of $4,000.00 for 72 months; Wife proposed an order in the amount of $50,000.00 to terminate only upon the death of either party.

{¶78}   The trial court ultimately awarded Wife spousal support in the amount of $7,500.00 per month, effective October 1, 2024, and subject to the continuing jurisdiction of the court as to term and amount.   The court based this award on its consideration of the following factors in R.C. 3105.18(C)(1):

Case No. 2024-L-075

a. Wife has no income.  Husband has a salary of $175,000.00 per year plus income from interest and dividends in the amount of $240,000.00 for 2022, which were associated with the sale of SMP.  Neither party provided the Court with tax returns prior to 2022.  Husband is the Trustee and beneficiary of three trusts with assets of over $40,000,000.00.

b. Wife has very little earning ability as evidenced by her lack of earnings during the marriage.  Husband has an earning ability consistent with his present salary.

c. Wife is 57 years old.  While she is in good physical condition, her mental and emotional condition preclude full-time employment.  Husband, age 57, is in good physical and mental health.

d. The retirement benefits of the parties have been awarded to Wife in the approximate amount of $1,471,000.00.

e. This is a marriage of twenty-six (26) years (6-20-98 through 7-8-24).

f. The standard of living of the parties established during the marriage was that of a high income family.  They took frequent vacations; they lived in upscale neighborhoods; and their children received expensive private school educations.  Husband testified that his parents paid for some of the foregoing expenses.  However, the assets of his parents (share in [SMP]) have been transferred to Husband's trusts and [his brother's] trusts.

g. Wife has an associate's degree and some miscellaneous certifications.  Husband has a Bachelor's degree.

h. Wife's assets are the assets awarded to her in this decree of divorce, i.e., the proceeds from the sale of the marital residence; the Husband's 401(k) and Roth IRA; and the personal property in her possession.  The Husband's assets are his trusts and personal property in his possession.  The Wife's primary liabilities are her attorney fees.  The Husband's liabilities are his debt to Oppidum of approximately $530,000.00 and his debt to his father of approximately $200,000.00.

i. Wife contributed to the earning ability of the Husband by fulfilling her role in the marriage as homemaker and corporate wife.

j. As discussed in other provisions of this decree, the parties are in very different financial circumstances.  This is the result of the prenuptial agreement.  It is also the result of the structuring of Oppidum so as to give Husband's brother effective control over Husband's interest in Oppidum.

Case No. 2024-L-075

k. Wife was a homemaker and primary caretaker for the parties' children. During the course of the marriage these responsibilities precluded her from developing any significant income production capacity.

l. Husband's 2022 income includes proceeds from the sale of SMP. This is a one-time occurrence and will not be used in determining Wife's ongoing spousal support.

Husband's Second Assignment of Error

{¶79} In his second assignment of error, Husband contends the trial court failed to consider and determine Wife's earning capacity. We find no abuse of discretion in the trial court's determination that Wife's role as homemaker and primary caretaker for the parties' children during the marriage precluded her from developing any significant income-production capacity. The court also found that Wife's current mental and emotional condition preclude her from obtaining full-time employment. Husband argues that the record is devoid of any evidence to support this finding, save Wife's "self-serving" testimony. However, the trial court is in the best position to weigh testimony, and we presume the trial court's factual findings are correct. *See Nelson*, 2022-Ohio-658, at ¶ 26 (11th Dist.). The trial court did not abuse its discretion in finding Wife's testimony credible and relying upon it.

{¶80} Husband's second assignment of error is not well taken.

Husband's Third Assignment of Error

{¶81} In his third assignment of error, Husband contends the trial court erred and abused its discretion by awarding Wife spousal support in the amount of $7,500.00 per month without setting a termination date.

{¶82} The Supreme Court of Ohio has indicated its preference that spousal support be awarded for limited periods of time: "Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to

Case No. 2024-L-075

develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definite limit upon the parties' rights and responsibilities." *Kunkle*, 51 Ohio St.3d 64 at paragraph one of the syllabus.

{¶83} In this case, the exceptions to the preferred rule support an indefinite award. The parties' marriage was of long duration (26 years); Wife was a homemaker-spouse and primary caretaker of the parties' four children with little opportunity to develop meaningful employment outside the home; and given her current emotional and mental condition, Wife does not have the ability to be self-supporting. *See, e.g., Houck v. Houck*, 1997 WL 800923, *6 (11th Dist. Dec. 26, 1997) (finding the exception was satisfied where the homemaker-wife had little chance to develop employable skills during the parties' 30-year marriage). The trial court's retention of jurisdiction over the award of spousal support is also significant, "as it enables the court to review its decision to ensure equitable results should substantial changes occur in the parties' respective situations." *Id*. at *7. Accordingly, we find no abuse of discretion in the trial court's decision to award spousal support without a termination date, subject to the court's continuing jurisdiction.

{¶84} Husband's third assignment of error is not well taken.

<u>Wife's Fifth Assignment of Error</u>

{¶85} In her fifth and final assignment of error, Wife contends the trial court refused to consider Husband's income from all sources and improperly issued a spousal support order based solely on Husband's base salary. In short, Wife maintains that the award of spousal support equates to only 8% of Husband's total income and is insufficient to provide her with a lifestyle comparable to that established during the marriage.

Case No. 2024-L-075

{¶86} The trial court found that "Husband has a salary of $175,000.00 per year plus income from interest and dividends in the amount of $240,000.00 for 2022, which were associated with the sale of [SMP]. Neither party provided the Court with tax returns prior to 2022. Husband is the Trustee and beneficiary of three trusts with assets of over $40,000,000.00. . . . Husband's 2022 income includes proceeds from the sale of [SMP]. This is a one-time occurrence and will not be used in determining Wife's ongoing spousal support."

{¶87} We agree with Wife that these findings are unsupported by the record.

{¶88} First, Wife provided the trial court with multiple tax returns prior to 2022, including the parties' joint returns for many years between 2009 and 2019, Husband's individual returns for 2020 and 2021, returns for one of Husband's trusts for 2019 and 2020, and Oppidum's tax return for 2021. These tax returns, and others, were admitted as exhibits and stipulated to by Husband's counsel during trial. Wife maintains that these tax returns are relevant to the spousal support decision because Husband misrepresented his income to the trial court in sworn affidavits. She notes, for example, that Husband's individual tax returns for 2020 and 2021 list his adjustable gross income as $2,482,360.00 and $21,139,869.00, respectively, but that in his Affidavits of Income, Expenses and Property, Husband reports his "total gross annual income" as "TBD" in 2021, $175,000.00 in 2022, $588,000.00 in 2022, and $415,220.00 in 2024.

{¶89} Second, it is not clear that the income Husband received in 2022 from interest and dividends was a one-time occurrence associated with the sale of SMP. Wife maintains the trial court failed to understand or consider that Husband's 49% interest in Oppidum is valued at $44,634,603.65 and that he earns significant interest and dividends

on this asset each year. Wife's position is supported by Husband's own proposed findings of fact on the matter:

166. Defendant has also historically earned dividend and interest income from his irrevocable trusts (which hold an ownership interest in the successor entity to [SMP, Oppidum].

167. Defendant's dividend income in 2022 was $158,123. Defendant's interest income in 2022 was $82,106. These are the only recurring sources of income Defendant earns, along with his wages.

168. Defendant does not withdraw the interest and dividend income from the trusts, but has a right to. For the purpose of spousal support determination, Defendant's total annual income is at most, $415,000. His 2022 income tax return shows taxable income of $119,164, after a recorded pass-through loss of $270,000 from [Oppidum]. Defendant does not expect to receive any interest or dividend income from his trusts in 2023.

{¶90} Although the parties disagree as to whether the trial court should consider this source of income for spousal support purposes, both citing expert testimony at trial, it appears that the trial court may have operated under the misconception that this source of income was neither recurring nor accessible to Husband.

{¶91} The trial court's explanation of Husband's income for spousal support purposes contains facts unsupported by the record and is insufficient to enable us to review whether the award is fair, equitable, and in accordance with the law. *Kaechele*, 35 Ohio St.3d 93, at paragraph two of the syllabus; *Kondik*, 2009-Ohio-2300, at ¶ 93 (11th Dist.). We must therefore remand the matter to the trial court for further consideration. We do not suggest that the trial court must necessarily alter the current order of spousal support. Instead, we direct the trial court to further consider Husband's sources of income for spousal support purposes and provide sufficient explanation for appellate review.

{¶92} Wife's fifth assignment of error has merit to the extent indicated.

Case No. 2024-L-075

## Husband's Fourth Assignment of Error

{¶93} In his fourth assignment of error, Husband contends the trial court erred and abused its discretion by retroactively modifying its temporary spousal support order and awarding Wife $116,000.00 in the final divorce decree.

{¶94} "When requested in the complaint, answer, or counterclaim, or by motion served with the pleading, upon satisfactory proof by affidavit duly filed with the clerk of the court, the court or magistrate, without oral hearing and for good cause shown, may grant a temporary order regarding spousal support to either of the parties for the party's sustenance and expenses during the suit . . . ." Civ.R. 75(N)(1). "*Upon request, in writing*, after any temporary spousal support . . . is journalized, the court shall grant the party so requesting an oral hearing within twenty-eight days to modify the temporary order." (Emphasis added.) Civ.R. 75(N)(2).

{¶95} It is well established by judicial application of Civ.R. 75(N) that "[t]emporary support orders may be modified retroactively to the date on which a motion to modify was filed." *Thorp v. Thorp*, 2011-Ohio-1015, ¶ 55 (11th Dist.), citing *Doody v. Doody*, 2007-Ohio-2567, ¶ 48 (11th Dist.), citing *Ostmann v. Ostmann*, 2006-Ohio-1015, ¶ 45, fn. 11 (9th Dist.), *Rush v. Oblinger*, 2006-Ohio-2459, ¶ 12 (8th Dist.), and *Miller v. Miller*, 1987 WL 5493, *2 (6th Dist. Jan. 16, 1987). Conversely, when parties are operating under a temporary support order and there is no pending request for modification, it is inequitable to retroactively increase the amount of temporary spousal support. *See Morrison v. Morrison*, 2014-Ohio-2254, ¶ 23-24 (9th Dist.), citing *Ostmann* at ¶ 43-45. In that circumstance, "[a]ny modification, downward or upward, may equitably be applied only prospectively from the date of the decree." *Ostmann* at ¶ 45. "This rule comports with due process, which mandates that a party receive adequate notice that a court is

considering modification of support as well as opportunity to refute the other's claims." *Walpole v. Walpole*, 2013-Ohio-3529, ¶ 41 (8th Dist.).

{¶96}  On March 11, 2022, the trial court granted Wife's motions for temporary spousal support, ordering Husband to pay Wife $3,500.00 per month and other bills and expenses, effective January 1, 2022, until further order of the court.

{¶97}  Wife directs us to her March 16, 2022 motion for a Civ.R. 75(N) hearing, in which she requested an increase of the temporary support order.  She fails to note, however, that the trial court overruled her motion, following a hearing, on September 6, 2022.

{¶98}  Following the final day of trial, on July 12, 2024, the trial court issued a judgment entry in which it found Husband in contempt of court for failing to pay certain expenses and additionally ordered Husband to pay an increased amount of temporary spousal support, effective August 1, 2024, in the amount of $7,500.00 per month.  The entry stated that "issues of retroactivity and amount of temporary support are subject to reconsideration at the final disposition herein."  Subsequently, in the final divorce decree, the trial court found that the amount of spousal support awarded to Wife in the temporary orders, $3,500.00 per month, was insufficient for Wife to maintain the status quo prior to the filing of the divorce complaint.  The court therefore ordered Husband to pay Wife an additional $4,000.00 per month, retroactively, from April 2022 through September 2024.

{¶99}  At the time the trial court issued these orders, there was no motion to modify the temporary spousal support order pending before the court.  Accordingly, the trial court was only permitted to modify the amount of temporary spousal support prospectively from the date of either entry.

Case No. 2024-L-075

{¶100} We therefore uphold the trial court's prospective modification of temporary spousal support as ordered in the July 12, 2024 entry, in the amount of $7,500.00 per month, effective from August 1, 2024 through the date of the final divorce decree, October 2, 2024. However, the trial court's retroactive modification of temporary spousal support as ordered in the final divorce decree was an abuse of discretion and contrary to law. Prior to August 1, 2024, the enforceable amount of temporary spousal support remains $3,500.00 per month plus other expenses the trial court ordered Husband to pay in the temporary orders.

{¶101} Husband's fourth assignment of error has merit to the extent indicated.

**ATTORNEY FEES**

Husband's Fifth Assignment of Error

{¶102} In his fifth and final assignment of error, Husband contends the trial court erred and abused its discretion by awarding Wife $300,000.00 as and for reasonable attorney fees and witness fees. Husband argues he has been ordered to pay attorney fees in an amount so high that it shocks the conscience and must be reversed. *See Shury v. Cusato*, 2022-Ohio-4401, ¶ 48 (8th Dist.) (a trial court abuses its discretion when the amount of fees is so high or so low as to shock the conscience).

{¶103} "In an action for divorce . . ., a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A). An award of attorney fees is within the sound discretion of the trial court, and the court's discretion

Case No. 2024-L-075

will not be overruled absent an attitude that is unreasonable, arbitrary, or unconscionable. *Rand v. Rand*, 18 Ohio St.3d 356, 359 (1985).

{¶104} During the proceedings, the trial court awarded costs and attorney fees to each party in the amount of $100,000.00, of which Wife received only $83,000.00 because of tax consequences. At the final hearing, Wife requested an award of attorney fees in the amount of $619,286.26 plus litigation expenses of $41,324.00. In the divorce decree, the trial court made the following findings:

> The litigation in this case was marked by an extraordinary level of animosity and contentiousness. Despite the large sums in dispute, the issues are neither unique nor complicated. The parties' children are emancipated. The retirement benefits are known. They each own an automobile. The marital residence has been sold. The parties' prenuptial agreement was negotiated with both sides having legal representation. The most complicated issue was the sale of [SMP]. The primary dispute was whether any of the transactions resulted in a change of Husband's interests as separate property to marital property. The Court has concluded it did not.

The court then delineated certain actions of Wife's counsel that had increased her fees, noting: "Although the legal strategy of the Wife's attorney might be described as 'leave no stone unturned,' the Court views it as more akin to the labors of Sisyphus."[1]

{¶105} The court determined that the amount of fees Wife's counsel requested was excessive in light of the complexity of the issues and the results obtained. The court instead awarded Wife $300,000.00 in attorney fees and witness fees plus interest at the statutory rate.

{¶106} Husband argues that he should not be responsible to pay for Wife's attorney fees related to any legal matter other than this divorce case. Wife's counsel admitted at the final trial that his fee statements included charges for the civil protection order case

---

1. According to Greek mythology, Sisyphus was condemned to roll a rock up to the top of a mountain, only to have the rock roll back down to the bottom every time he reached the top.

Case No. 2024-L-075

Wife filed against Husband. However, it does not appear from the record that these fees were included in the amount awarded by the trial court.

{¶107} Husband also maintains that he has no ability to pay the attorney fee award because the trial court awarded nearly all the marital assets and liquidity to Wife, placing her in a superior financial position. He claims to have no access to the SMP sale proceeds due to the spendthrift provisions of the trusts, which do not allow for debts or obligations of the beneficiaries to be paid with trust assets, and there is no reason to believe that such a withdrawal would be authorized by his brother, the majority owner of Oppidum.

{¶108} A court is not required to determine a party's ability to pay the attorney fees that the court awards. *See Harkey v. Harkey*, 2008-Ohio-1027, ¶ 130 (11th Dist.). The standard is whether an award is "equitable" in light of the parties' marital assets, income, conduct, temporary support orders, and any other relevant factor. R.C. 3105.73(A).

{¶109} Under the facts and circumstances of this case, we cannot say the trial court's award of attorney fees was inequitable or an abuse of discretion. Although Husband's conduct was not the sole reason for many actions undertaken by Wife's counsel, the record reveals it was an effort for Wife to obtain discovery and Husband was held in contempt more than once for failure to pay temporary spousal support and other bills and expenses as ordered throughout these proceedings. Husband was awarded all bank accounts in his name and earns a substantial income. The assertion that he has no liquidity is not well taken. We discern no indication of an arbitrary, unreasonable, or unconscionable attitude by the trial court in rendering the attorney fee award and therefore defer to the court's decision on this issue.

{¶110} Husband's fifth assignment of error is without merit.

**CONCLUSION**

{¶111} The divorce decree issued by the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part. Having found merit with Wife's fifth assignment of error and Husband's first and fourth assignments of error, we vacate the court's retroactive modification of the temporary spousal support order and remand the court's final spousal support order and division of marital assets for further consideration and findings of fact.

JOHN J. EKLUND, J.,

SCOTT LYNCH, J.,

concur.

Case No. 2024-L-075

## JUDGMENT ENTRY

For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part. This case is remanded for further proceedings consistent with the opinion.

Costs to be taxed against the parties equally.

_____
JUDGE MATT LYNCH

_____
JUDGE JOHN J. EKLUND,
concurs

_____
JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-L-075